UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
JUL 2 0 2011
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

INTERNATIONAL INTERNSHIPS )
PROGRAMS, )
                                              )
            Plaintiff, )
                                              ) Civil Case No. 10-1234 (RJL)
v. )
                                              )
JANET NAPOLITANO, *et. al*, )
                                              )
           Defendants. )

## MEMORANDUM OPINION
(July 19, 2011) [#10]

On October 5, 2010, Plaintiff International Internship Programs ("IIP" or "plaintiff") filed suit against the Secretary of the U.S. Department of Homeland Security, Janet Napolitano ("the Secretary"); the Director of the U.S. Citizenship and Immigration Services (the "USCIS Director" ); the Chief of the USCIS Administrative Appeals Office; the Director of the Vermont Services Center (the "Vermont Director"); the USCIS; the Attorney General of the United States; and the United States (collectively, "defendants"), alleging violations of (among other things) the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 (2006), *et seq.* Am. Compl., Oct. 5, 2010 [Dkt. #6]. After amending its complaint a second time,[1] plaintiff filed a Motion for Temporary Restraining Order and/or Preliminary Injunctive Relief ("Mot. For TRO/PI"). Mot. For TRO/PI, Dec. 3, 2010 [Dkt. #10]. Three days later, this Court denied plaintiff's request

---

[1] Second Am. Compl., Dec. 1, 2010 [Dkt. #9].

1

for a TRO, converted the motion into one seeking only a preliminary injunction, and set a date to hear argument. *See* Civ. Case. No. 10-1234, Minute Order, Dec. 6, 2010. The parties briefed the motion and this Court heard argument from both sides on December 21, 2010. *See* Civ. Case. No. 10-1234, Minute Order, Dec. 21, 2010. At the close of the hearing, the Court invited each side to submit supplemental pleadings. Each side did so. *See* Pl.'s Supp. Mem. In Supp. of Mot. For Prelim. Inj. Relief ("Pl.'s Supp. Mem."), Jan. 13, 2011 [Dkt. #20]; Def.'s Supp. Mem. In Opp'n to Pl.'s Mot. For Prelim. Inj., Jan. 13, 2011 [Dkt. #19]. Now before the Court is plaintiff's Motion For Preliminary Injunctive Relief ("Pl.'s Mot. For PI") [Dkt. #10]. Upon review of the pleadings, the supplemental pleadings, oral argument, the entire record, and the applicable law, plaintiff's motion is DENIED.

## BACKGROUND

### I. International Internship Program

The International Internship Program ("IIP" or "plaintiff") is an I.R.C. § 501(c)(3) non-profit corporation which has, for the last thirty years, sponsored a cultural exchange program in which visitors from Japan, Korea, Thailand, and China visit the United States and participate in a program which includes an internship component. Second Am. Compl. ¶¶ 6, 44. In short, IIP recruits nonresident alien visitors,[2] applies for and secures

---

[2] IIP refers to aliens as "cultural exchange visitors." *See Second* Am. Compl. ¶ 42.

Q-1 cultural visas[3] for the participants, places the aliens in internships with "host schools," and monitors each participant's internship with the host school. Am. Compl. ¶¶ 44-64. The program, as well as the internship, typically last for an academic "semester" – that is, fall, spring, or summer. See Second Am. Compl. ¶¶ 72, 85. Interns pay from $5,400 to $8,600 to participate in the program.[4] In addition to an internship, IIP provides a $100 per-month stipend to each intern, plus $200 per month to a host family that provides the intern with board, meals, and other incidentals. Second Am. Compl. ¶ 87; Pl.'s Mot. For PI at 4 (citing ¶ 115). Importantly, participants are *not* paid for their work as interns at the various host schools. Second Am. Compl. ¶ 43.

The allure of IIP's program – and its unique offering – is, of course, its ability to secure a Q-1 visa for each of its participant aliens. If IIP is unable to obtain a visa for one of its participants for any reason, however, IIP's programmatic offerings become moot since the nonresident alien will not be permitted to enter the United States as a cultural visitor. Thus, IIP's ability to secure Q-1 visas is critical to its long-term economic viability.

---

[3] Q-1 visas authorize entry into the United States for cultural exchange visitors who meet certain statutory and regulatory qualifications. See 8 U.S.C. § 1101(a)(15)(Q), 8 C.F.R. § 214.2(q)(2010) (statute and regulation governing "Q-1" visas).

[4] See also USCIS Notice of Action, Defs.' Opp'n, Ex. 1, at 3. Plaintiff contends that these monies are paid to IIP's U.S. affiliate in the participant's home country, and not to the U.S. non-profit corporation which is a plaintiff in this litigation. Pl. Resp. to RFE, Defs.' Opp'n, Ex. 2 at 4.

## II. Statutory and Regulatory Requirements For Q-1 Visas

This action arises from the USCIS Vermont Service Center's November 16, 2010 denial of plaintiff's petition for eleven Q-1 visas for its 2010-2011 cultural exchange program. Pl.'s Supp. Mem. at 4; Pl.'s Mot. For PI at 4.[5] To procure a Q-1 visa, a U.S. employer must simultaneously petition USCIS for Q-1 status for the individual named in the petition, and for approval for the employer's international cultural exchange program. 8 C.F.R. § 214.2(q)(3)(i) (2010). To gain approval of its cultural exchange program, the employer must also demonstrate three elements: (1) "accessibility to the public" such that "the American public, or a segment of the public sharing a common cultural interest, is exposed to aspects of a foreign culture as part of a structured program"; (2) a cultural component "which is an essential and integral part of the international cultural exchange visitor's employment or training"; and (3) a work component which "may not be independent of the cultural component of the international cultural exchange program." *Id.* § 214.2(q)(3)(iii). Critical to this work component is the employer's "financial ability to remunerate the participant(s)" and its obligation to "offer the alien(s) *wages and working conditions* comparable to those accorded local domestic workers similarly employed." *Id.* § 214.2(q)(4)(i)(D), (E) (emphasis added); *see also* Pl.'s Mot. For PI at 4; Defs.' Opp'n at 3-4.

---

[5] *See* Def.'s Mem. In Opp'n to Pl.'s Mot. For a Prelim. Inj. ("Def.'s Opp'n), Dec. 16, 2010, at 3 [Dkt. #14] (detailing the complete back-and-forth between IIP and USCIS).

## III. USCIS Review of IIP's Visa Petitions

USCIS denied plaintiff's petition because (among other reasons) IIP did not prove that its program satisfied the work component required for Q-1 visa approval, and specifically failed to satisfy the 8 C.F.R. § 214.2(q)(4)(i)(D) obligation to offer "wages and working conditions comparable to those accorded local domestic workers similarly employed." *See* USCIS Notice of Action, Defs.' Opp'n, Ex. 1, at 2-3. In sum, USCIS determined that "[t]he record does not provide information regarding an appropriate salary or wage that will be provided to the beneficiaries." *Id.* at 2. USCIS noted that IIP's petition "d[id] not adequately address the work component," *id.* at 3, and concluded that "[i]n truth, the IIP is not actually paying the participant. Rather, the participant is paying IIP to participate in the program . . . . it does not appear that the participants will be receiving a livable wage while working as cultural ambassadors at the host schools." *Id.* at 2. USCIS requested further documentation from IIP showing that "you are in fact paying the participants and that they are not paying you for the experience," *id.* at 3, and plaintiff responded by letter on October 29, 2010. *See* Pl.'s Response to RFE, Defs.' Opp'n, Ex. 2 at 1.

Plaintiff now contends that the USCIS Vermont Service Center's denial was not based on "any evidence, much less substantial evidence." Pl.'s Mot. For PI at 7. As a result, plaintiff seeks injunctive relief, contending that IIP is likely to prevail on the merits and in the meantime will suffer irreparable injury if injunctive relief is denied by this Court. *Id.*

5

## ANALYSIS

### I. Standard of Review

The factors a court must weigh in deciding whether to grant a preliminary injunction are familiar: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury in the absence of injunctive relief; (3) whether the requested injunction would not substantially injure other interested parties; and (4) whether the requested injunction would further the public interest. *Smoking Everywhere, Inc. v U.S. Food & Drug Admin.*, 680 F. Supp. 2d 62, 66 (D.D.C. 2010) (citing *Ark. Dairy Co-op. Ass'n, Inc. v. U.S. Dep't of Agric.*, 573 F.3d 815, 821 (D.C. Cir. 2009)) (internal quotations omitted). The party seeking an injunction bears the burden[6] of demonstrating that relief is warranted, although the moving party "need not prevail on every factor." *Smoking Everywhere, Inc.*, 680 F. Supp. 2d at 66. A preliminary injunction is, however, an "extraordinary and drastic remedy." *See RCM Techs., Inc. v. Beacon Hill Staffing Grp., LLC*, 502 F. Supp. 2d 70, 72-73 (D.D.C. 2007) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). Indeed, "[a] preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and consider the effect of granting or

---

[6] Defendants argue that because plaintiff seeks to change (rather than to preserve) the *status quo* "through action," plaintiff seeks a mandatory injunction and must make, as a result, a "clear showing" that injunctive relief is necessary. *In re Navy Chaplaincy*, 516 F. Supp. 2d 119, 123 (D.D.C. 2007); *see also* Def.'s Opp'n at 5 n.1 (citing cases for and against a heightened standard). This Court need not reach the issue of heightened standards, however, because – as explained below – plaintiff does not meet even the basic standard for injunctive relief.

withholding the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008) (internal citations and quotations omitted). Unfortunately, plaintiff fails to satisfy *any* of the four factors necessary to grant injunctive relief.

## II. Plaintiff Does Not Demonstrate That Injunctive Relief Is Warranted.

At first blush, it appears that plaintiff seeks injunctive relief in the form of an order from this Court directing USCIS to immediately approve IIP's visa petition.[7] Upon closer inspection, however, it is clear that even if plaintiff could prevail on the merits – which are not currently in play – this Court could not provide the relief it seeks. *See* Defs.' Opp'n at 2. Indeed, even if this Court *were* to determine that USCIS made an error of law, the appropriate remedy would be a remand back to the agency. *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999); *see also* Defs.' Opp'n at 5-6. In light of these facts, plaintiff backpedals in its Supplemental Motion and ultimately acknowledges that "this Court . . . cannot order that a visa be either approved or issued." Pl.'s Supp. Mot. at 2. Clarifying its requested relief, plaintiff now asks this Court to "require the Vermont Service Center to *authorize* the consular office to consider whether a visa should issue"—a request that amounts to a nuanced half-step away from plaintiff's original position. *See id.* at 2 (emphasis added). Assuming *arguendo* that such an order is issuable by this Court, IIP, nevertheless, still fails to demonstrate that injunctive relief is warranted. How so?

---

[7] Indeed, IIP attached a proposed order to its Motion for Preliminary Injunction requesting this exact remedy. *See* Pl.'s Mot. For PI, Proposed Order at 1.

7

## A. Plaintiff Does Not Show A Likelihood of Success on the Merits.

Plaintiff's underlying suit seeks relief under the APA, which requires a court to set aside final agency action it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although review of plaintiff's request for injunctive relief must be conducted under one particular standard, the standard of review for evaluating agency action of this kind is quite different and must be employed in evaluating plaintiff's likelihood of success on the merits.

Judicial review of USCIS' construction of the Q-1 visa statute and the application of its relevant regulations, *see* 8 U.S.C. § 1101(15)(Q); 8 C.F.R. § 214.2(q)(3)(iii), must be accorded due deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).[8] Such deference is appropriate here, of course, because USCIS interpreted and applied the relevant statutory and regulatory provisions to form the basis of its decision to deny plaintiff's Q-1 visa petition. *See Smoking Everywhere*, 680 F. Supp. 2d at 68-69 (citing *Citizens Exposing Truth About Casinos v. Kempthorne*, 492

---

[8] Plaintiff inexplicably contends that *Chevron* deference should not be conferred on USCIS because (1) the relevant statutes and regulations (and thus the Congressional intent) are clear and (2) the U.S. Department of Labor ("DOL") – not the USCIS – is responsible for determining the wages and working conditions of U.S. workers. Pl.'s Supp. Mot. at 9-10. Plaintiff's first claim, for which it offers no explanation or legal support, *see* Pl.'s Reply at 6, is conclusory and wholly unpersuasive. Plaintiff's second contention categorically fails because Congress specifically conferred regulatory authority to DHS (and thus to its departmental component USCIS), not DOL. *See* 8 C.F.R. § 214.2(q)(1)(iii)(2010) (conferring authority over international cultural exchange programs to the U.S. Attorney General); Nonimmigration Classes, Int'l Cult. Exch. Visitors, Q Classification, 57 Fed. Reg. 55056, 55059 (Nov. 24, 1992) (final rule); *see also* 8 C.F.R.§ 1.1 (2011) (references in 8 C.F.R. § 214 to "the Service" or to "the director" now refer to USCIS and its officials).

8

F.3d 460, 466 (D.C. Cir. 2007) (*Chevron* deference applies in the absence of formal rulemaking or adjudication when agency action has the force of law)).

In the first step of a *Chevron* analysis, the Court assesses "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. Suffice it to say that although Congress raised the issue of the conditions of, and wages due to, nonimmigrant aliens participating in cultural exchanges, it did not speak *directly* to issues such as the meaning of "same wages," "working conditions," or the metric of comparison implied in 8 U.S.C. § 1101(15)(Q). Thus, the limited inquiry for this Court is whether USCIS's position is "permissible" – that is, a reasonable construction or application of the Q-1 visa statute and its relevant regulations. For the following reasons, I believe the USCIS's position is, in fact, permissible and as such plaintiffs have no likelihood of success on the merits.

As discussed earlier,[9] USCIS denied plaintiff's request for eleven Q-1 visas largely because IIP did not address (much less meet) the statutory and regulatory requirements that it offer comparable wages and working conditions for its interns. *See* USCIS Denial, Defs.' Opp'n, Ex. 1 at 3. But instead of explaining why USCIS' legal conclusion – that Q-1 visa recipients must be paid wages adequate under the regulation – is not a reasonable interpretation of the statute and regulations, plaintiff, for the most part, simply regurgitates the contents of its petition, arguing (with only sparse legal analysis) that the petition should have been granted on the merits.

---

[9] *See supra* at Section III.

Nonetheless, plaintiff ultimately advances two arguments in support of the "likelihood of success" prong. First, plaintiff contends that USCIS did not base its denial of IIP's Q-1 petition "on any evidence, much less substantial evidence." Pl.'s Mot. For PI at 7. Second, it argues that if the USCIS *had* properly considered the record evidence, it would have concluded that the proposed IIP internships met the regulatory criterion for comparable wages and working conditions because the work "would be designated as that of a volunteer by the Department of Labor for which comparable domestic workers would receive no salary under the DOL interpretation of its own statutes and regulations."[10] Pl.'s Reply at 7. Unfortunately for the plaintiff, neither of these claims is availing.

As a preliminary matter, plaintiff asserts (on numerous occasions) that the USCIS bore the burden of "contradict[ing] or contest[ing]" the evidence provided in IIP's petition. *See, e.g.*, Pl.'s Mot. For PI at 6-7; Pl.'s Reply at 2-4. That assertion, however, is not only unfounded; plaintiff knows better! To wit, in its own brief, plaintiff acknowledges that the "substantial evidence" test employed for agency review *only* requires that the agency's finding be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pl.'s Mot. For PI at

---

[10] Plaintiff also argues that USCIS erred by stating that IIP must pay participants "adequate" wages. Pl.'s Reply at 4. This argument is a red herring. It is clear from the USCIS decision (and from common sense) that the term "adequate" – while not included in the statute or regulations – merely refers to the petitioner's ability to offer "the same wages and working conditions" required by 8 U.S.C. § 1101(a)(15)(Q) and 8 C.F.R. § 214.2(q)(4)(i)(D). That is, that the wages are "adequate" under the statute and regulations.

2 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).[11] Moreover, the APA confers no burden-shifting obligation on USCIS to specifically refute IIP's claims; it merely requires it to consider and weigh the evidence in IIP's petition. Defs.' Opp'n at 7. Suffice it to say, plaintiff's suggestion that USCIS failed its duty to "contradict or contest evidence," Pl.'s Mot. For PI at 6, is, at best, disingenuous.

With respect to plaintiff's broad allegation that USCIS failed the substantial-evidence test, the agency's explanation of its denial manifestly contradicts plaintiff's conclusory assertion. *See* USCIS Denial, Defs.' Opp'n, Ex. 1 at 3-4 (noting USCIS's review of the host schools' applications and agreements and of IIP's training program documents, and making multiple references to USCIS review of record evidence pertaining to the regulatory work component). Indeed, plaintiff offers no credible evidence suggesting otherwise.

Finally, regarding plaintiff's Department of Labor argument: as I have already noted, Congress delegated authority to the Department of Homeland Security (and thus, to USCIS) – *not* the DOL – to regulate international cultural exchange programs. *See* 8 C.F.R. § 214.2(q)(1)(iii). This authority undoubtedly extends to USCIS' determinations of whether a nonimmigrant alien is being paid wages "comparable to local domestic workers." *Id.* § 214.2(q)(4)(i)(D).

---

[11] To that end, plaintiff's brazen mischaracterization of binding case law is most unfortunate. *Compare* Pl.'s Reply at 3-4 (citing *Butte County v. Hogen*, 613 F.3d 190 (D.C. Cir. 2010) (agency's refusal to consider evidence constitutes arbitrary agency action under the APA), *with* Pl.'s Reply at 4 ("It follows that USCIS cannot reject IIP's evidence without contrary evidence of its own calling IIP's evidence into question.").

11

USCIS, both in its interpretation of the statute and in its application of regulations, construes "same wages," 8 U.S.C. § 1101(15)(Q), to presuppose the payment of *some* wages to recipients of Q-1 visas. Plaintiff, for its part, does not. *See* Pl.'s Mot. For PI at 6-7. Specifically, plaintiff argues that since DOL classifies volunteers and interns as workers, IIP can legally pay its interns zero income if that compensation is the "same" as a similar intern or volunteer would make in the United States. *Id.*

But IIP's argument strikes this Court as strained, if not contrived, since plaintiff not only fails to support its "volunteer" argument with case law or statue, but also ignores Congress' pronounced use of the term "wages" and the reasonable implication that "wages" refers to some non-zero number. In any event, this Court's limited scope of review does not include choosing the best construction of the Q-1 visa statute. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (if "the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its construction on the statute . . . [r]ather . . .the question for the court is whether the agency's answer is based on a permissible construction."). Because USCIS' construction is a reasonable one, and because plaintiff offers no persuasive legal explanation to show how USCIS's interpretation of the regulation is *not* reasonable, plaintiff is not likely to succeed on its claim that the USCIS' denial of IIP's Q-1 visas was contrary to law, arbitrary and capricious, contrary to constitutional right and privilege, or unsupported by substantial evidence. *See* Second Am. Comp. ¶¶ 158, 172, 181, 187.

USCIS, both in its interpretation of the statute and in its application of regulations, construes "same wages," 8 U.S.C. § 1101(15)(Q), to presuppose the payment of *some* wages to recipients of Q-1 visas. Plaintiff, for its part, does not. *See* Pl.'s Mot. For PI at 6-7. Specifically, plaintiff argues that since DOL classifies volunteers and interns as workers, IIP can legally pay its interns zero income if that compensation is the "same" as a similar intern or volunteer would make in the United States. *Id.*

But IIP's argument strikes this Court as strained, if not contrived, since plaintiff not only fails to support its "volunteer" argument with case law or statue, but also ignores Congress' pronounced use of the term "wages" and the reasonable implication that "wages" refers to some non-zero number. In any event, this Court's limited scope of review does not include choosing the best construction of the Q-1 visa statute. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (if "the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its construction on the statute . . . [r]ather . . .the question for the court is whether the agency's answer is based on a permissible construction."). Because USCIS' construction is a reasonable one, and because plaintiff offers no persuasive legal explanation to show how USCIS's interpretation of the regulation is *not* reasonable, plaintiff is not likely to succeed on its claim that the USCIS' denial of IIP's Q-1 visas was contrary to law, arbitrary and capricious, contrary to constitutional right and privilege, or unsupported by substantial evidence. *See* Second Am. Comp. ¶¶ 158, 172, 181, 187.

### B. Plaintiff Does Not Demonstrate That It Will Suffer The Necessary Irreparable Harm.

There is no doubt that plaintiff alleges some type of harm. For example, IIP claims that as a result of the Q-1 visa denials, neither the eleven nonimmigrant aliens whose visas were denied, nor the host schools for the Winter 2010-Fall 2011 program, can participate in the cultural exchange; that IIP cannot find substitute participants or host schools due to the program's "deteriorating reputation"; that the IIP's foreign affiliates can no longer recruit participants because they cannot provide for the U.S. program; and that because IIP cannot provide the program, it does not receive the funds that the U.S. and foreign affiliates typically use to operate. Pl.'s Mot. For PI at 7-8.

Unfortunately, however, plaintiff does not demonstrate that it will suffer the *irreparable* harm necessary absent the injunctive relief it seeks. Specifically, plaintiff's allegations suffer from two major defects. First, plaintiff does not demonstrate *future* harm (which is, of course, the only type of preventable harm). To show irreparable harm, IIP must prove that its injury is "certain to occur in the near future," and that this harm could not be prevented without an injunction. *Wisc. Gas Co. v. Fed. Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985). Yet plaintiff plainly asserts that its "injuries have already occurred." Pl.'s Mot. For PI at 8; *see also id.* at 7-8 (listing examples of harm that has already occurred); Pl.'s Reply at 4-5 (conceding past harm). At no point does plaintiff offer evidence of imminent harm beyond the past injury it alleges.

Second, IIP does not support its claim of economic harm with any type of evidence. Although a business facing a loss that "threatens the very existence of the movant's business," is usually sufficient to establish irreparable harm, "[i]mplicit in [this] principle [] is the further requirement that the movant substantiate the claim." *Wisc. Gas Co.*, 758 F.2d at 674. Yet plaintiff does not offer a single piece of evidence – not a bill, financial statement, past budget, current budget, or financial projection – to support the harm it alleges. Indeed, plaintiff's bald assertions that "[t]he economic loss associated with the irreparable injury threatens the very existence of the IIP-US' business" and that "IIP-US will be obligated to cease operations," Pl.'s Mot. For PI at 1, 9, simply do not suffice to prove irreparable injury.[12] As such, plaintiff does not meet the burden of showing that "the injury [is] both certain and great . . . actual and not theoretical." *Wisc. Gas Co.*, 758 F.2d at 674. Plaintiff accordingly fails to demonstrate the second factor for injunctive relief.

### C. Plaintiff Ignores The Negative Effect An Injunction Would Have On The Most Important "Other Interested Party."

Plaintiff fundamentally misapprehends the concept of "other interested parties," contending that "the only individuals who would be considered interested parties are nonimmigrant aliens . . . who are coming temporarily . . . to the specific areas of the United States identified in the Petition to be a participant in an international cultural exchange program approved by the Secretary of Homeland Security . . . and who will be

---

[12] Similarly unhelpful is plaintiff's snarky assertion that "[z]ero income should be considered a key economic indicator." Pl.'s Reply at 8.

compensated for their services," Pl.'s Mot. For PI at 10, and insisting that an injunction would not harm those parties.

Yet plaintiff ignores the most important "other interested party" of all: the United States. Not surprisingly, plaintiff utterly fails to account for how an injunction would affect the United States government. In particular, plaintiff seemingly disregards how the injunction it seeks would severely undermine the Congress' plenary power over the admission of aliens, *see Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972) ("Over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens.") (internal quotations omitted), and USCIS's authority to make regulatory determinations about the issuance of Q-1 visas. Def.'s Opp'n at 11. The negative effect on the United States is even more pronounced where, as here, plaintiff does not ask for a remand, but rather requests this court to substitute its judgment for that of the appropriate agency. *See* Pl.'s Mot. For PI (proposed order); *see also Motor Vehicle Mfgr's Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("a court is not to substitute its judgment for that of the agency"). Needless to say, plaintiff does not demonstrate how injunctive relief would *not* injure other parties. *See* Pl.'s Reply at 9 (denying injury to USCIS).

### D. Plaintiff Does Not Demonstrate How Injunctive Relief Would Further The Public Interest.

Finally, plaintiff fails to demonstrate how an injunction would further the public interest. To the contrary – and as explained above – the injunctive relief plaintiff requests would, in fact, *harm* the public interest. Indeed, issuance of an injunction would not only

subvert Congress' power over the admission of aliens into the United States, it would also contravene Congress' intent (as evidenced by statute) to require specific wage and working conditions for recipients of Q-1 visas. Def.'s Opp'n at 12.[13] Plaintiff offers no credible argument in favor of the public interest;[14] as a result, it fails to demonstrate why a preliminary injunction is warranted.

## CONCLUSION

For the reasons set forth above, the plaintiff International Internships Programs' Motion For Preliminary Injunctive Relief [Dkt. #10] is DENIED.

SO ORDERED.

RICHARD J. LEON
United States District Judge

---

[13] Plaintiff's interpretation of "public interest" is also deeply flawed. For example, what President Obama "thinks" about cultural exchange programs, see Pl.'s Mot. For PI at 14, or volunteerism, id. at 16-17, and his characterization of those beliefs in public speeches, has no legal effect. See Am. Fed'n of Gov't Emps., AFL-CIO v. Freeman, 498 F. Supp. 651, 658 (D.D.C. 1980) (President's public speech "is an insufficient basis for the exercise of lawful authority by executive agencies"). To the extent plaintiff suggests that IIP furthers the public interest because its program pertains to general topics the President, Cabinet members, or other public figures mention in public statements, that argument is to no avail.

[14] To be sure, plaintiff's recitation of USCIS' previous findings is neither helpful nor persuasive. See Pl.'s Mot. For PI at 11-14. Moreover, plaintiff misses the mark by arguing – in earnest – that "short only of compliance with the claimed salary requirement, [USCIS] has found the IIP[] cultural exchange program to be fully consistent with the Q-1 visa program." Id. at 14. This assertion – which almost appears tongue-in-cheek – disregards the primary point of contention between plaintiff and USCIS, and in no way advances plaintiff's argument that an injunction would serve the public interest.

16