UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL INTERNSHIP PROGRAMS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| JANET NAPOLITANO, *et al.*, | ) ) |
| Defendants. | ) |

Civil Case No. 10-1234 (RJL)

## MEMORANDUM OPINION
(March 29, 2012) [Dkt. #33, #37]

On December 1, 2010, plaintiff International Internship Programs ("IIP" or "plaintiff") filed its second amended complaint against the Secretary of the U.S. Department of Homeland Security, Janet Napolitano; the U.S. Citizenship and Immigration Services (the "USCIS"); the Director of the USCIS; the Chief of the USCIS Administrative Appeals Office; the Director of the Vermont Services Center; the Attorney General of the United States; and the United States (collectively, "defendants"), alleging violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, and the Regulatory Flexibility Act ("RFA"), 5 U.S.C. § 601, *et seq.* Second Am. Compl., Dec. 1, 2010 [Dkt. #9] ¶¶ 7-11, 158-201. On December 3, 2010, plaintiff filed a Motion for Preliminary Injunctive Relief. Mot. for Prelim. Inj. [Dkt. #10]. A hearing was held on December 21, 2010, and this Court denied the motion on July 19, 2011. Mem. Op. ("Prelim. Inj. Op."), July 19, 2011 [Dkt. #29] at 2.

On February 21, 2012, our Circuit Court dismissed the plaintiff's appeal as moot because the "intended period of employment [to which the Q-1 visas applied] ended on January 24, 2012," and "[t]he parties no longer h[ad] a legally cognizable interest in the determination of whether the preliminary injunction was properly denied." *Int'l Internship Programs v. Napolitano, et al.*, No. 11-5197, 2012 WL 555580, at *1 (D.C. Cir. Feb. 21, 2012) (citation and internal quotation marks omitted). The Court of Appeals "express[ed] no opinion on the merits of IIP's claims." *Id.*

On August 16, 2011, defendants filed a Partial Motion to Dismiss and Partial Motion for Summary Judgment ("Defs.' Mot.") [Dkt. #33]. Plaintiff, in turn, filed a Cross-Motion for Summary Judgment ("Pl.'s Mot.") [Dkt. #37]. Upon review of the pleadings,[1] the applicable law, and the entire record herein, the Court GRANTS defendants' motion and DENIES plaintiff's motion.

## BACKGROUND

### I.    International Internship Program

IIP is an I.R.C. § 501(c)(3) non-profit corporation that sponsors a cultural exchange program in which visitors from Japan, Korea, Thailand, and China travel to the United States. Second Am. Compl. ¶¶ 6, 44. Program participants are nonresident alien

---

[1] On February 9, 2012, defendants filed a Suggestion of Mootness [Dkt. #44], notifying the Court that the validity periods for the Q-1 visas sought by IIP had expired. Plaintiff responded on February 24, 2012 [Dkt. #45]. Those arguments have been considered by this Court in advance of this decision.

2

visitors[2] who work in primary, secondary, and other educational institutions (the "host schools") instructing on "the attitude, the customs, history, heritage and traditions of the [participants'] home country." *Id.* ¶¶ 42, 45. Each host school determines the exact curriculum offered, but IIP monitors the programs to ensure compliance with IIP guidelines. *Id.* ¶¶ 48-64. The program typically lasts for an academic "semester." *Id.* ¶¶ 72, 85. Participants pay between $5,400 and $8,600 to participate in the program, Certified Administrative Record ("CAR"), Aug. 16, 2011 [Dkt. #35] at 2498, and in exchange, IIP places the participants in host schools and applies for and secures Q-1 cultural visas[3] for them. Second Am. Compl. ¶¶ 42, 65. IIP also provides a $100 per-month stipend for incidentals to each participant plus $200 per month to a host family that provides the participants with board, meals, and other expenses.[4] *Id.* ¶¶ 87, 115; Pl.'s Mot. at 11; CAR at 73, 2505. Importantly, neither IIP nor the host schools pay the program participants for their work. Second Am. Compl. ¶¶ 43, 116; Pl.'s Mot. at 26.

---

[2] IIP refers to the nonresident alien visitors as "cultural exchange visitors," "interns," and "program participants." *See* Second Am. Compl. ¶¶ 42, 43, 89. I will use these terms interchangeably.

[3] Q-1 visas authorize entry into the United States for cultural exchange visitors who meet certain statutory and regulatory qualifications. *See* 8 U.S.C. § 1101(a)(15)(Q); 8 C.F.R. § 214.2(q) (statute and regulation governing "Q-1" visas).

[4] Plaintiff contends that the participation fees are paid to the IIP's U.S. affiliate in the participant's home country and not to the U.S. non-profit corporation which is the plaintiff in this litigation. CAR at 2505. It appears that the stipend and host family allowance are then paid out of these participation fees. *See* Second Am. Compl. ¶ 125; Pl.'s Mot. at 17 (quoting the IIP Program Fee Schedule which provides "that the program fee 'includes orientation materials, placement monitoring, home stay accommodation and three meals daily, transportation to and from school a US$100 per month [allowance], and airport pick up on arrival.'").

## II.   Statutory and Regulatory Requirements For Q-1 Visas

As part of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978,

Congress introduced Q-1 visas to create an international cultural exchange program "to

enhance the knowledge of the diversity of other cultures." Mem. in Supp. of Defs.' Mot.

("Defs.' Mem."), Aug. 16, 2001 [Dkt. #33-1] at 4 (quoting H.R. Rep. No. 101-723(I),

at 81 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6751); 8 U.S.C. § 1101(a)(15)(Q).

After a period of public notice and comment, the final Q-1 rule and regulations were

published in November 1992. Defs.' Mem. at 4; Pl.'s Mot. at 25. As part of this final

publication, and pursuant to the RFA, USCIS[5] "certifie[d] that this rule w[ould] not have

a significant adverse economic impact on a substantial number of small entities." 57 Fed.

Reg. 55056, 55060 (Nov. 24 1992) (codified at 8 C.F.R. pt. 214); Defs.' Mem. at 10-11.

To obtain a Q-1 visa, a U.S. employer must simultaneously petition USCIS for

Q-1 status for the cultural exchange visitor named in the petition and for approval of the

employer's international cultural exchange program. 8 C.F.R. § 214.2(q)(3)(i). The

cultural exchange visitor's petition will be accepted if, as part of an approved cultural

exchange program, he or she "engage[s] in employment or training of which the essential

element is the sharing with the American public, or a segment of the public sharing a

common cultural interest, of the culture of the alien's country of nationality." *Id.* To

gain approval of its cultural exchange program, the employer must demonstrate three

---

[5] In 1992, and until 2002, the Immigration and Naturalization Service oversaw the Q-1 visa program. USCIS inherited the program under the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. *See* Defs.' Mem. at 1 n.1. For purposes of consistency, however, I will continue to reference the USCIS.

elements: (1) "accessibility to the public" such that "the American public, or a segment of the public sharing a common cultural interest, is exposed to aspects of a foreign culture as part of a structured program"; (2) a cultural component "which is an essential and integral part of the international cultural exchange visitor's employment or training"; and (3) a work component which "may not be independent of the cultural component of the international cultural exchange program." *Id.* § 214.2(q)(3)(iii). Critical to this work component is the employer's "financial ability to remunerate the participant(s)" and its obligation to "offer the alien(s) *wages and working conditions* comparable to those accorded local domestic workers similarly employed." *Id.* § 214.2(q)(4)(i)(D)-(E) (emphasis added); *see also* Second Am. Compl. ¶¶ 35, 40; Defs.' Mem. at 13. Once approved, the visa is valid "for the duration of the program, which may not exceed 15 months." 8 C.F.R. § 214.2(q)(3)(ii).

## III.   USCIS Review of IIP's Visa Petitions

This action arises from decisions by the Vermont Services Center ("VSC") and USCIS Administrative Appeals Office ("AAO"), the USCIS appellate body, (together, the "USCIS") denying, in whole or in part, three of IIP's Q-1 visa petitions. Pl.'s Mot. at 1. In August 2009, IIP filed a Q-1 petition with the VSC for eighteen visas. CAR at 2-4. After issuing a Request for Evidence ("RFE") and receiving plaintiff's response, *id.* at 59-62, 68-77, the VSC approved the petition and certified its decision to the AAO, *id.* at 39-44; *see also* Pl.'s Mot. at 5-8. The AAO affirmed the decision but advised the VSC to reconsider the duration of the visas because IIP did not establish "that the [interns] would be performing services consistent with the program during the summer

5

months." CAR at 34-37; Pl.'s Mot. at 8-9. After issuing a second RFE, CAR at 31-32,

the VSC approved the visas but limited their duration to conform to the schools'

academic calendar, *id.* at 1461; Pl.'s Mot. at 9. Plaintiff is challenging this limitation.[6]

In January 2010, IIP filed a second petition for Q-1 visas. CAR at 1362-65; Pl.'s

Mot. at 9. After requesting additional information and reviewing plaintiff's RFE

response, CAR at 1377-90; Pl.'s Mot. at 9, the VSC denied the petition because, among

other reasons, the interns would not "receive wages comparable to those of local

domestic workers similarly employed," CAR 1357-1361; Pl.'s Mot. at 10. On review,

the AAO affirmed the denial, noting that the regulations require the employer to pay the

interns "actual wages." CAR at 1207-08; Pl.'s Mot. at 12. Plaintiff is now challenging

AAO's subsequent denial of its motion to reconsider. CAR at 791, 805-06; Pl.'s Mot.

at 12-13.

Plaintiff admits that it considers the cultural exchange visitors to be unpaid

volunteers, CAR at 814, and argues that the most comparable local domestic workers are

unpaid interns or Americorps volunteers, Pl.'s Mot. at 11-12. However, the AAO,

relying on the Department of Labor's *Occupational Outlook Handbook*, found the

cultural exchange visitors' responsibilities to be comparable to teacher assistants,

requiring equivalent wages. CAR at 798-99. The AAO noted that, under the program's

current design, the "[interns] may have a greater financial obligation to [IIP] than [IIP]

does to the [interns]" because the interns must pay various fees and travel expenses in

---

[6] Plaintiff is challenging this limitation despite the fact that plaintiff agreed to it. "IIP agreed to modify the duration [of the visa] to conform to the school year." Second Am. Compl. ¶ 72.

order to even participate in the program.[7]  *Id.* at 1206.  Accordingly, the AAO concluded that the structure of the program "is contrary to the regulatory requirements that must be adhered to by qualified employers."  *Id.* at 1207.

In October 2010, IIP filed a third petition for Q-1 visas.  *Id.* at 2258-60.  Again, the VSC issued an RFE to which plaintiff responded.  *Id.* at 2497-2500, 2502-11.  The VSC rejected the petition because "the regulations require that [IIP] pay the [interns] actual wages commensurate with their duties," *id.* at 2255-56, and plaintiff amended its complaint to challenge this denial.

Plaintiff now contends:  (1) that the USCIS's denials of IIP's Q-1 visa petitions were "arbitrary, capricious, not in accordance with law, in excess of statutory limitations, short of statutory right, . . . contrary to Constitutional Right and Privilege, [and] not supported by substantial evidence," Second Am. Compl., Prayer for Relief ¶ 1 (Counts I-IV, together, the "APA claims"); (2) that USCIS effectively amended the Q-1 regulation through its instant decisions and, in violation of the APA, did not publish the amendment for notice and comment, Second Am. Compl. ¶¶ 194-97 (Count V); and (3) that USCIS violated the RFA by not conducting a new small-entity impact analysis "in association[] with its changed views" and "revised gloss on the regulation," Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Oct. 2, 2011 [Dkt. #39] at 2-3; Second Am. Compl.

---

[7] Indeed, plaintiff confirms that "[t]here is little question that it costs the cultural visitors/interns more to participate in the IIP-US program than they receive[] in cash back."  CAR at 815.

¶¶ 198-201 (Count VI).  Plaintiff seeks declaratory and injunctive relief in addition to costs and expenses.[8]  Second Am. Compl., Prayer for Relief ¶¶ 1-4.

## STANDARD OF REVIEW

Defendants move to dismiss plaintiff's claims for failure to state a claim upon which relief can be granted, for lack of subject-matter jurisdiction, as barred by the statute of limitations, and on grounds of mootness. Defs.' Mem. at 1-2.  Defendant additionally moves, in the alternative, for summary judgment on plaintiff's APA claims. *Id.* at 3.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted) (alteration in original).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "[T]he court need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The court may,

---

[8] In its complaint, plaintiff requests "a mandatory injunction requiring the defendants to approve, *nunc pro tunc*, the IIP's I-129 petitions."  Second Am. Compl., Prayer for Relief ¶ 2.  Plaintiff admits that the Court may be limited in its ability to provide this relief.  *Id.* ¶ 1.  I agree.  If plaintiff were to prevail on its APA claims, the Court, at most, may remand to the agency for further proceedings.  *Cnty of L.A. v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999).

however, consider "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

A court may also dismiss a complaint, or any portion of it, that does not fall within the court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to "actual [c]ases and [c]ontroversies." *Utah v. Evans,* 536 U.S. 452, 459 (2002) (citing U.S. Const. art. III, § 2, cl. 1) (internal quotation marks omitted). Thus, if an event occurs that renders it impossible for the Court to "grant any effectual relief whatever to a prevailing party," the case must be dismissed as moot. *Beethoven.com LLC., et al. v. Librarian of Congress*, 394 F.3d 939, 950 (D.C. Cir. 2005) (citations and internal quotation marks omitted).

When deciding a motion for summary judgment in a case involving a review of final agency action, "the Court's role is limited to reviewing the administrative record." *Air Transport Ass'n of Am., Inc. v. Nat'l Mediation Bd.,* 719 F. Supp. 2d 26, 32 (D.D.C. 2010). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Stuttering Found. of Am. v. Springer,* 498 F. Supp. 2d 203, 207 (D.D.C. 2007) (quoting *Occidental Eng'g Co. v. INS,* 753 F.2d 766, 769-70 (9th Cir. 1985)); *see also* Fed. R. Civ. P. 56(a).

## ANALYSIS

Plaintiff alleges that the defendants violated the procedural requirements of the RFA and APA when they limited and denied IIP's petitions for Q-1 visas. In addition to procedural issues, plaintiff alleges that defendants' decisions should be found unlawful under the APA for (1) requiring actual wages to be paid; (2) finding the interns' working conditions comparable to teaching assistants; and (3) limiting IIP's program to the schools' academic calendar. Plaintiff contends that its program complies with all of the Q-1 regulation requirements and the interns, as unpaid volunteers, are sufficiently compensated. Defendants argue that their decisions to deny plaintiff's visa petitions are supported by substantial evidence and subject to highly deferential judicial review. Defendants additionally argue that plaintiff's APA claims are moot. Unfortunately for the plaintiff, I agree with the defendants and, for the reasons that follow, GRANT defendants' Partial Motion to Dismiss and Partial Motion for Summary Judgment.

## I.    Plaintiff Fails to State a Claim Under the RFA.

Under the Regulatory Flexibility Act, when an agency proposes or promulgates a new rule, it is required to conduct a "regulatory flexibility analysis . . . describ[ing] the impact of the . . . rule on small entities" (the "small-entity impact analysis"). 5 U.S.C. §§ 603(a), 604. However, no such analysis is required "if the head of the agency certifies that the rule will not . . . have a significant economic impact on a substantial number of

small entities."[9] *Id.* § 605(b). An agency's compliance with § 605(b) may be reviewed if "a small entity . . . is adversely affected or aggrieved by final agency action"—that is, the issuance of a final rule or regulation. *Id.* § 611(a)(1); *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 42, 42 n.27 (D.C. Cir. 2005) (agency order adopting proposed rule was a legislative rule and therefore subject to judicial review for compliance with the RFA). The parties agree that the statute of limitations for this cause of action is one year. Pl.'s Opp'n at 2; Defs.' Reply to Pl.'s Opp'n ("Defs.' Reply"), Oct. 31, 2011 [Dkt. #42] at 8; *see also* 5 U.S.C. § 611(a)(3)(A) ("A small entity may seek . . . review during the period beginning on the date of final agency action and ending one year later.").

Plaintiff concedes that USCIS complied with the RFA when it first promulgated the Q-1 visa regulations.[10] Second Am. Compl. ¶¶ 198-99; Pl.'s Mot. at 34. Plaintiff contends only that the USCIS effectively amended the Q-1 visa regulations when it denied IIP's petitions, thereby violating the RFA by not conducting a small-entity impact analysis at that time. Pl.'s Mot. at 34-35; Pl.'s Opp'n at 3. I disagree.

---

[9] At the time the Q-1 regulations were promulgated, the RFA required only that the certification include "a succinct statement explaining the reasons for such certification." 5 U.S.C. § 605(b) (1980). The RFA was amended in 1996 by the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, 110 Stat. 866 (codified as amended at 5 U.S.C. §§ 601-612), and now requires "a statement providing the factual basis for such certification." 5 U.S.C. § 605(b).

[10] To the extent plaintiff challenges USCIS's compliance with the RFA upon initial promulgation of the Q-1 regulations, the cause of action is barred by the statute of limitations. Plaintiff had one year from the date the regulation was issued in 1992 to file suit, 5 U.S.C. § 611(a)(3)(A); plaintiff did not file its complaint until 2010.

A "rule" under the RFA is any rule requiring notice and comment pursuant to § 553(b) of the APA.[11]  5 U.S.C. § 601(2).  "[I]f an agency adopts 'a new position *inconsistent with*' an existing regulation, or effects 'a *substantive change in* the regulation,'" the agency must comply with the notice and comment requirements of the APA and, in turn, the small-entity analysis requirements of the RFA. *U.S. Telecom Ass'n*, 400 F.3d at 35, 42 (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100 (1995) (emphasis in original).  The APA specifically exempts from its notice and comment requirements "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* § 553(b)(A).  An interpretive rule is an "agency's reading of a statute or rule.  It does not intend to create new rights or duties, but only reminds affected parties of existing duties." *Orengo Caraballo v. Reich*, 11 F.3d 186, 195 (D.C. Cir. 1993) (citation and internal quotation marks omitted).  "A statement seeking to interpret a statutory or regulatory term is, therefore, the quintessential example of an interpretive rule," particularly "in the course of an adjudication." *Id.*

To the extent plaintiff contends that the USCIS's denial of its visa petitions "repudiate[d]" or "amend[ed] the Q-1 regulation" such that the USCIS promulgated a "rule" under the RFA requiring a small-entity impact analysis, Pl.'s Mot. at 34-35; *see*

---

[11] Under the APA, a "rule" is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency."  5 U.S.C. § 551(4).

*also* Pl.'s Opp'n at 3, I completely reject this contention.[12]  Plaintiff has put forth no case law to support its assertion.  USCIS's denials of IIP's petitions are neither "inconsistent with" nor "a substantive change in" the Q-1 visa regulation; at most, the denials represent an interpretive rule.  Here, USCIS interpreted each statutory component as part of its review of IIP's visa petitions.  *See, e.g.*, CAR at 43 (AAO referring to the application and approval process as a "proceeding").  USCIS's interpretation that the regulations required employers to pay "actual wages" imposed *no* new duties on IIP.  Since its promulgation, the Q-1 regulations have required employers to pay "wages . . . comparable to those accorded local domestic workers."  8 C.F.R. § 214.2(q)(4)(i)(D).  Similarly, the regulations have always required the work component to "serve as the vehicle to achieve the objectives of the cultural component."  *Id.* § 214.2(q)(3)(iii).  USCIS's decisions were not "rules" under the RFA; therefore, plaintiff fails to state a claim for relief under the RFA.[13]

---

[12] Additionally, I reject any suggestion by the plaintiff that the USCIS was required to conduct periodic small-entity impact analyses.  *See* 5 U.S.C. § 610.  By certifying under § 605(b) that the regulations "will not . . . have a significant economic impact on a substantial number of small entities," the USCIS exempted itself from these periodic reviews.  5 U.S.C. § 605(b).  Indeed, while a regulation may have a "significant economic impact" on one small entity, *see* Pl.'s Mot. at 35; Pl.'s Opp'n at 3, the RFA is concerned with a regulation's "economic impact on a *substantial number* of small entities," 5 U.S.C. § 605(b) (emphasis added), and plaintiff has provided no evidence of such an impact.

[13] For these reasons, Count V of plaintiff's complaint is also dismissed.  Plaintiff alleges that the USCIS violated the APA when it effectively amended the Q-1 regulations through its denials and did not publish the amendment for notice and comment.  Second Am. Compl. ¶¶ 195-97.  Because, as discussed above, USCIS's denials did not constitute a "rule," the agency was not required to comply with the APA's notice and comment procedures.  5 U.S.C. §§ 551(4), 553(b)-(c).

## II.    Plaintiff's APA Claims Are Moot.

On the face of its complaint, plaintiff's APA claims are indisputably moot.

Plaintiff sought injunctive and declaratory relief for visas valid through January 24,

2012.[14]  CAR at 2260.  As this date has long since passed, the Court is unable to grant

any effectual relief.  *Beethoven.com LLC., et al.*, 394 F.3d at 950.  Undaunted, plaintiff

argues that this case falls within the "capable of repetition but evading review" exception

to the mootness doctrine.[15]  Pl.'s Opp'n to Defs.' Suggestion of Mootness ("Pl.'s Opp'n

Mootness"), Feb. 24, 2012 [Dkt. #45] at 4.  This exception, however, only applies in

"exceptional situations," where both "(1) the challenged action [is] in its duration too

---

[14] Chronologically, plaintiff's petitions sought approval for Q-1 visas valid
through November 14, 2010, CAR at 4, February 28, 2011, *id.* at 1364, and January 24,
2012, *id.* at 2260.

[15] Plaintiff also contends that this is a challenge to an "ongoing policy" and,
therefore, an exception to the mootness doctrine. I disagree. Plaintiff appears to be
arguing that the USCIS's petition denials are indicative of some broader agency policy.
Pl.'s Opp'n at 1-2; Pl.'s Opp'n Mootness at 4-5. However, plaintiff has not demonstrated
that there is *any* policy, guideline, or memorandum to this effect. The petition denials are
three distinct decisions by the USCIS in three individual proceedings based on the facts
presented in the petitions—not reflective of an agency-wide policy. *See, e.g.,* CAR at 37
(AAO affirming petition approval after reviewing the entire record but suggesting VSC
review the proposed program dates and request additional evidence to clarify summer
work details); CAR at 1196, 1203-08 (AAO affirming petition denial after reviewing
plaintiff's petition, its brief in support of its petition, and additional documentary
evidence submitted in response to VSC's RFE, noting the plaintiff's failure to provide
adequate information regarding the participants' summer activities and compensation as
requested); CAR at 803-05 (AAO denying plaintiff's motion to reconsider its petition and
affirming its decision, citing plaintiff's sustained inability to provide adequate
information concerning participants' work duties and type of compensation). *See also
Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 118, 122 (1974) (applying the
"ongoing policy" exception to mootness doctrine in a challenge to regulations); *Better
Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 89, 91-92 (D.C. Cir. 1986) (applying the
"ongoing policy" exception to mootness doctrine in an action challenging agency
guidelines).

short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable

expectation that the same complaining party [will] be subject to the same action again."

*Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (alterations in original) (citations and internal

quotation marks omitted). "[B]oth Supreme Court and circuit precedent hold that orders

of less than two years' duration ordinarily evade review." *Burlington N. R.R. Co. v.*

*Surface Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996). To be capable of repetition,

"there must be a reasonable expectation or demonstrated probability that the same

controversy will recur involving the same complaining party." *Spirit of the Sage Council*

*v. Norton*, 411 F.3d 225, 230 (D.C. Cir. 2005) (citation and internal quotation marks

omitted).

  The plaintiff's instant action may "evade review" because Q-1 visas are valid for,

at most, a period of fifteen months, 8 C.F.R. § 214.2(q)(3)(iii)(A), but there is no

reasonable expectation or probability that this same controversy will recur. Before 2009,

USCIS had a seventeen-year history of approving plaintiff's visa petitions. Pl.'s Opp'n

at 2. In fact, one of the petitions currently before the Court was approved by USCIS.[16]

Second Am. Compl. ¶ 72. Although plaintiff declared that it will file future Q-1 visa

petitions, Declaration of Frederic W. Schwartz, Jr., Ex. 1 to Pl.'s Opp'n Mootness,

Feb. 23, 2012 [Dkt. # 45-1] ¶ 7, this alone is insufficient to show probability or

reasonable expectation of denial in light of the long history of approvals. *See, e.g.,*

*Spencer*, 523 U.S. at 17 (finding petitioner's habeas claim challenging allegedly

unconstitutional parole revocation procedures not capable of repetition, and therefore

---

[16] Plaintiff is challenging the duration of the approved visa. Pl.'s Mot. at 9, 31-33.

moot, because petitioner has not "demonstrated a reasonable likelihood that he will once again be paroled and have that parole revoked"). Because plaintiff's APA claims are moot, they must be dismissed for a lack of subject-matter jurisdiction.

### III.   USCIS's Decisions to Deny IIP's Q-1 Visa Petitions Were Not Arbitrary, Capricious, Contrary to Law, Contrary to Constitutional Right, or Unsupported by Substantial Evidence.

Even if this Court were to find jurisdiction over plaintiff's APA claims, the claims would not survive defendants' motion for summary judgment, because the defendants' decisions easily withstand review under the APA. How so?

Review of final agency action under the APA is highly deferential. *AT&T Corp. v. FCC,* 86 F.3d 242, 247 (D.C. Cir. 1996). The APA requires a court to set aside final agency action that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; or "contrary to constitutional right, power, privilege, or immunity"; or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C). A court must also set aside an agency decision if it is "unsupported by substantial evidence" in the record. 5 U.S.C. § 706(2)(E); *AT&T Corp.,* 86 F.3d at 247. But agency action is unsupported by "substantial evidence" only when it lacks what "a reasonable mind might accept as

adequate to support a conclusion."[17]  *Schoenbohm v. FCC*, 204 F.3d 243, 246 (D.C. Cir.

2000) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1966) (internal

quotation marks omitted).  "Because this standard is 'something less than the weight of

the evidence, . . . the possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's finding from being supported by

substantial evidence.'"  *Id.* (quoting *Consolo*, 383 U.S. at 620).  Indeed, section 706 of

the APA *requires* this Court to consider the administrative record in its entirety to

determine the factors the agency considered in making its decision.  5 U.S.C. § 706; *see*

*Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 419-20 (1971).

As noted in my earlier opinion denying plaintiff's request for a preliminary

injunction, because plaintiff invites the Court to review USCIS's construction of the Q-1

visa statute and the application of its relevant regulations, *see* 8 U.S.C. § 1101(a)(15)(Q);

8 C.F.R. § 214.2(q), USCIS is entitled to due deference under *Chevron, U.S.A., Inc. v.*

*Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  Prelim. Inj. Op. at 8.

Such deference is appropriate here, of course, because USCIS interpreted and applied the

---

[17] Plaintiff appears to argue that the Court must determine whether the "USCIS reached its decision utilizing a preponderance of the evidence test."  Pl.'s Mot. at 19-20 (citing *Matter of Chawathe*, 25 I. & N. Dec. 369, 375-76 (AAO 2010) (interpreting 8 U.S.C. § 1427(b), a statute irrelevant to the matter before the Court)).  Plaintiff also contends that "USCIS was required in each instance to articulate the contrary and preponderant substantial evidence on which it relied."  Pl.'s Mot. at 22.  This is incorrect.  While "an agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action," an agency need only provide "a brief statement of the grounds for [its] denial."  *Butte Cnty, Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (citations and internal quotation marks omitted).  Furthermore, the inquiry "turns not on how many discrete pieces of evidence [USCIS] relies on, but on whether that evidence adequately supports its ultimate decision."  *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010).

relevant statutory and regulatory provisions to deny plaintiff's Q-1 visa petitions. *See Citizens Exposing Truth About Casinos v. Kempthorne*, 492 F.3d 460, 466 (D.C. Cir. 2007) (*Chevron* deference applies even in the absence of formal rulemaking or adjudication when agency action has the force of law).

*Chevron* analysis, of course, is a two-step framework that requires the court to first determine "whether Congress has directly spoken to the precise question at issue," and then, if the intent of Congress is unclear, requires the court to review whether the interpretation offered by the agency is "based on a permissible construction of the statute."[18] *Chevron*, 467 U.S. at 842-43. Here, although Congress raised the issue of the conditions of, and wages due to, cultural exchange programs participants, it did not speak *directly* to the meaning of several of the terms used in 8 U.S.C. § 1101(a)(15)(Q). Thus, the limited inquiry for this Court is whether USCIS's position is "permissible"—that is, whether USCIS offered a reasonable construction or application of the Q-1 visa statute and its relevant regulations. For the following reasons, I believe the USCIS's positions are, in fact, quite permissible.

In short, plaintiff's APA challenges focus on three issues: (1) the USCIS's determination that the interns were teacher assistants, Second Am. Compl. ¶¶ 169, 171, 179-80, 189-91; (2) the USCIS's determination that the interns were to be paid an "actual wage," *id.* ¶¶ 163-164, 168, 170, 173-74, 178, 187; and (3) the USCIS's decision to limit

---

[18] Plaintiff argues that *Chevron* does not apply to the case at hand because "the intent of Congress could not have been clearer." Pl.'s Opp'n at 9. Plaintiff then inexplicably notes that the parties "diverge" on the statute's meaning. *Id.* By its own language, IIP admits that Congressional intent is unclear.

the visas' validity to the schools' academic calendar, *id.* ¶ 167, 177, 192.[19] First, the

Court must address again plaintiff's Department of Labor ("DOL") argument. Plaintiff

argues that the USCIS misapplied or misconstrued the DOL's regulations in determining

the comparable domestic worker and calculating the comparable wage. Pl.'s Mot.

at 23-24. I disagree. As I have previously stated: Congress delegated authority to the

Department of Homeland Security (and thus, to USCIS)—*not* the DOL—to regulate

international cultural exchange programs. *See* 8 C.F.R. § 214.2(q)(1)(iii); Prelim. Inj.

Mot. at 8 n.8, 11. This authority undoubtedly extends not only to USCIS's

determinations of whether a nonimmigrant alien is being paid wages "comparable

to . . . local domestic workers," 8 C.F.R. § 214.2(q)(4)(i)(D); Prelim. Inj. Op. at 11, but

also to whether a nonimmigrant alien is experiencing "working conditions comparable

to . . . local domestic workers," 8 C.F.R. § 214.2(q)(4)(i)(D), and to whether an employer

"[m]aintains an established international cultural exchange program in accordance with

the requirements set forth" in the Q-1 regulations, *id.* § 214.2(q)(4)(i)(A). Furthermore,

while the regulations for other nonimmigrant visas specifically require DOL

involvement, the Q-1 visa regulations contain no such condition. *See, e.g.,* 8 C.F.R.

§ 214.2(h)(2)(i)(E) (requiring H-1C, H-1B, H-2A, or H-2B petitions to include a DOL

---

[19] Plaintiff additionally alleges that the VSC's November 2010 denial of IIP's Q-1 visa petition was, as a whole, unsupported by substantial evidence. Second Am. Compl. ¶ 193. In this denial, the VSC determined that the relevant regulations required IIP to pay the interns "actual wages" and limited the visa duration to nine months because there was insufficient evidence to show that the interns would "either participate in a local educational summer program or in other activities in furtherance of the cultural visitors' missions." CAR at 2256. Because these issues overlap with plaintiff's general challenges, the Court will address them together.

determination). Thus, the USCIS may consider DOL regulations in reviewing petitions, but is not bound by their terms.

USCIS, both in its interpretation of the statute and in its application of the regulations, construes the "working conditions" of the interns to be "comparable to" teacher assistants, the "local domestic workers similarly employed." 8 C.F.R. § 214.2(q)(4)(i)(D); 8 U.S.C. § 1101(a)(15)(Q); CAR at 798-99. In contrast, plaintiff argues that it "submitted considerable evidence" of the "working conditions enjoyed by the IIP cultural visitors" and those of volunteers and unpaid interns—the local domestic workers IIP argues are comparably employed, Pl.'s Mot. at 21; Pl.'s Opp'n at 10—but that the USCIS "misconstrued [the] evidence" and "misapplied [the] DOL's position description for []teacher's assistant" in making its determination.[20] Pl.'s Mot. at 22. The Court finds, however, that USCIS offered a reasonable construction of the regulation supported by substantial evidence, *see, e.g.,* CAR at 798-99 (reviewing IIP's petition, response to RFE, and motion to reconsider its petition, the AAO determined that "the level of time commitment, lesson preparation, teacher involvement and evaluation criteria present in the [IIP's] program make the position directly comparable to a paid teaching assistant rather than to those of a volunteer who offers services as a tutor or classroom

---

[20] In fact, some of IIP's introductory materials directly refer to the interns as "teaching assistants." CAR at 797.

helper on an informal basis"), and plaintiff has offered no evidence to show that this explanation is unreasonable.[21]

Similarly, the Court finds that in interpreting the statute and applying the regulations, USCIS permissibly construed "same wages," 8 U.S.C. § 1101(a)(15)(Q), to presuppose the payment of *some* wages to recipients of Q-1 visas, CAR at 1207. Plaintiff argues that, under DOL regulations, the interns are volunteers and, as such, can be and are paid zero wages. Pl.'s Mot, at 26; Pl.'s Opp'n at 14. As the Court previously stated, this argument ignores Congress' pronounced use of the term "wages" and the reasonable implication that "wages" refers to some non-zero number. Prelim. Inj. Op. at 12. This interpretation is particularly reasonable in light of the statute's legislative history. Congress sought to protect wages by implementing "[s]afeguards in terms of wages and working conditions . . . in the bill," *see* Defs.' Mem. at 13 (quoting H.R. Rep. 101-723(I), at 81 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6751), and the USCIS specifically noted that the program requirements "were designed to ensure that the sponsoring employer . . . has the resources to . . . remunerate the cultural visitors," 57 Fed. Reg. 55056, 55058. Here, the USCIS concluded, based on the evidence, that the interns

---

[21] Plaintiff's repeated assertions that the interns' positions are comparable to unpaid interns are to no avail. Regardless of the amount of evidence plaintiff submitted to support its application, it was the USCIS's job to determine if IIP's petition met all of the statutory and regulatory requirements of Q-1 visas. 8 C.F.R. § 214.2(q)(7). As long as the USCIS "consider[ed] all the evidence," *id.* § 214(q)(7)(i), and made a reasonable conclusion supported by substantial evidence, 5 U.S.C. § 706(2)(E), the Court cannot find the decision "arbitrary, capricious, not in accordance with law, in excess of statutory limitations, short of statutory right, . . . contrary to Constitutional Right and Privilege, [or] not supported by substantial evidence," Second Am. Compl., Prayer for Relief ¶ 1; 5 U.S.C. § 706(2).

performed roles comparable to those of teacher assistants.  CAR at 798-99.  Based on

defendants' reasonable interpretation and plaintiff's admission that neither IIP nor the

host schools pay the interns wages,[22] Second Am. Compl. ¶¶ 43, 116; Pl.'s Mot. at 26,

this Court will uphold this conclusion.

 Finally, USCIS approves Q-1 visas for the duration of time the "employer is

conducting an approved international cultural exchange program . . . not [to] exceed

15 months."  8 C.F.R. § 214.2(q)(1)(iii).  Upon review of IIP's petitions, the USCIS

found that IIP's program was not complying with the regulations' cultural and work

components during the summer and other extended breaks.  *See, e.g.*, CAR at 37; CAR

---

[22] Plaintiff appears to argue in the alternative that, if the regulations required IIP to
pay wages to the interns, then IIP did so in the form of room and board and monthly
stipends.  *See* Pl.'s Opp'n at 15-16.  Using the Health and Human Services poverty line
determination, plaintiff estimated that the cultural exchange visitors received
compensation worth approximately $9,400.  CAR at 811-12.  Plaintiff's assertion fails for
two reasons.  *First*, it ignores the fact that the monthly stipend and housing allowances
are paid out of the participation fees paid by the interns.  Second Am. Compl. ¶ 125; Pl.'s
Mot. at 17.  *Second*, as stated by the AAO in its June 2010 decision, "the relevant
comparison is whether the beneficiaries are receiving *wages* that are comparable to
domestic workers similarly employed, not whether the beneficiaries are receiving room
and board or other non-wage compensation comparable to a person living at or slightly
below the poverty line.  The regulations at 8 C.F.R. § 214.2(o)(4)(i)(D) and
§ 214.2(11)(ii) refer specifically to 'wages' and not to 'wages and/or other
compensation.'"  CAR at 802-03 (emphasis in original).

 Plaintiff insists that "IIP has never claimed that by any calculation the sums paid
to the cultural exchange visitors even approaches the wages of a teacher assistant."  Pl.'s
Opp'n at 16.  According to plaintiff, "[t]he Department of Labor has determined that the
2009 prevailing wage for 'teacher assistant' was $22,820.00 per annum."  Second Am.
Compl. ¶ 143.  Plaintiff has, however, asserted that the interns received wages
comparable to Americorps volunteers.  CAR at 1386.  Plaintiff estimates that Americorps
volunteers receive compensation in the form of stipends, room and board, and transition
payment totaling approximately $12,000.  CAR at 1206.  Thus, even if the USCIS was
convinced that plaintiff paid the interns actual wages, the wages are not even comparable
to the domestic workers plaintiff alleges are similarly employed.

at 32 (VSC requesting additional information from IIP "establish[ing] what the [interns] would be doing during the summer break period if the validity extends during those months and how these activities would relate to your cultural programs with the host schools"). Plaintiff offered limited evidence to support its assertion that the interns "participate in a local educational summer program or in other activities in furtherance of the [interns'] mission" during the extended breaks, *see* CAR at 1390, arguing that, in previous years, interns worked at summer schools or camps or enrolled in English language courses to improve their language skills, Pl.'s Mot. at 31; CAR at 2510 ("A copy of what the current participants did during the summer is attached."); *see* CAR at 2724-35 (emails and surveys from past interns describing their summer activities). But, there is no guarantee that the interns will engage in these activities because summer plans are not pre-arranged; rather the interns must seek out potential summer opportunities once they arrive at their host schools. CAR at 1203-04, 2510. The USCIS, recognizing that IIP could request an extension of the visas, CAR at 32; 8 C.F.R. § 214.2(q)(10), found that based on the evidence submitted, IIP was unable to establish that the interns were engaging in cultural activities during the extended school breaks,[23] CAR at 2256 (IIP's statement alone was "not sufficient to show that the [interns] will

---

[23] Notably, in its June 2010 denial, the USCIS observed that the visa approval period would not have been limited to the academic year because IIP submitted copies of contracts with the host schools in which the host schools were required to "identify summer cultural activities and to acknowledge the requirement that participant[s] take part in such activities." CAR at 804. However, any participant "who remained in the United States during a summer break solely for the purpose of traveling or studying would not be in compliance with the . . . program and would violate the terms of their Q-1 [visa], rendering them subject to removal." *Id.*

actually be participating in a cultural program during this time"). The Court finds this to be a reasonable interpretation.

Because USCIS reasonably construed the Q-1 rule and regulations, and because plaintiff offers no persuasive legal explanation to show how USCIS's interpretations of the regulations are *not* reasonable, the Court finds that USCIS's denials of plaintiff's Q-1 visa petitions were not contrary to law, arbitrary and capricious, contrary to constitutional right and privilege,[24] or unsupported by substantial evidence. As such, defendants' motion must be, and is, GRANTED.

---

[24] IIP claims that, through its denials, the USCIS imposed "unlawful and improper restrictions . . . on its programs" depriving IIP of its "right to engage in its business . . . without due process." Second Am. Compl. ¶¶ 183-84, 186. Plaintiff argues that approval of its "program is akin to a licen[s]e" and is a "protectible [sic] property interest." Pl.'s Opp'n at 7. Plaintiff contends that it has a right to this purported license based on USCIS's "pattern and practice of reviewing and approving the IIP's petitions." *Id.* IIP does not have an effective license. "USCIS has approved many prior petitions filed by [IIP], . . . [but] each petition filing is a separate proceeding with a separate record." CAR at 805 (citing 8 C.F.R. § 103.8(d)). IIP can only obtain Q-1 visa approval if it meets the statutory and regulatory requirements, and the USCIS "is not required to approve applications or petitions where eligibility has not been demonstrated merely because of prior approvals." *Id.* (citation omitted). Importantly, "there is no property right in an immigrant visa." *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011) (citing *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("[A]n alien who seeks admission to this country may not do so under any claim of right . . . . [It] is a privilege granted by the sovereign United States Government.")). Furthermore, plaintiff does not identify what process, if any, is due, and a general reference to the Fifth Amendment is not a specific process due. *Doe by Fein v. Dist. of Columbia*, 93 F.3d 861, 868 (D.C. Cir. 1996). To the extent plaintiff alleges that an RFA analysis and notice and comment are the processes due, the Court has already determined that these procedures were not required.

## CONCLUSION

For the reasons set forth above, defendants' Partial Motion to Dismiss and Partial

Motion for Summary Judgment [Dkt. #33] is GRANTED and plaintiff's Cross-Motion

for Summary Judgment [Dkt. #37] is DENIED.  An Order consistent with this decision

accompanies this Memorandum Opinion.

      SO ORDERED.

RICHARD J. LEON
United States District Judge